IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANNY YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:06cv0678 |
| ) | |
| BRIDGESTONE AMERICAS HOLDING, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Danny Young brings suit against Defendant Bridgestone Americas Holding, Inc. ("BSAH"), Young's former employer's pension plan administrator, under 29 U.S.C. § 1132 (ERISA § 502) for wrongful denial of disability retirement benefits. Pending before the Court are cross motions for judgment on the administrative record. (Doc. No. 30 (Plaintiff's Motion); Doc. No. 34 (Defendant's Cross Motion).) For the reasons set forth below, the Court finds that BSAH's denial of Plaintiff's claim for disability retirement benefits was not arbitrary and capricious and, because the decision was rational in light of the disability plan's provisions, the Court must uphold the determination. Consequently, Plaintiff's motion will be denied and Defendant's motion granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Danny Young began working for Bridgestone/Firestone North American Tire, LLC, formerly known as Bridgestone/Firestone Inc. (collectively, "Bridgestone"), at Bridgestone's LaVergne, Tennessee tire manufacturing facility on June 12, 1988. Young worked full time at Bridgestone in the position of "cureman" up until October 8, 2001, when he was given two days' notice of Bridgestone's intent to terminate his employment. October 8, 2001 was the last day Young worked, but his termination from Bridgestone was not actually effective until October 10, 2001. (*See* Compl. ¶ 4.) According to BSAH, Young was terminated because he was asked based upon probable cause, and refused, to submit to a drug test or to sign a release form to participate in a drug treatment program. (*See* Exhibits to Doc. No. 29, Administrative Record (hereafter "AR"), at 00408.)

While employed by Bridgestone, Young was a member of the United Steelworkers of America and

its Local 1055-L (collectively, "Union"). He was thus covered by the collective bargaining agreement and benefit plans applicable to production employees in the LaVergne facility. One of those plans is Supplement 1 to the Bridgestone Americas Holding, Inc. Non-Contributory Pension Plan (hereafter, the "Pension Plan" or "Plan"). There is no dispute that the Plan was created and operated pursuant to ERISA. The benefits provided by the Plan and the eligibility requirements for those benefits are described in one of the Plan documents, the Pension and Insurance Agreement Between Bridgestone/Firestone, Inc. and the United Steelworkers of America, AFL, CIO, CLC, the applicable version of which took effect on September 21, 2000.

At issue in this case is the "Disability Retirement" benefit potentially provided by the Pension Plan. (AR 00021–22, Art. IV, § 3.) Under Article IV, the Plan provides a monthly disability pension benefit "upon retirement" to covered participants who meet the qualifications established by the Plan. (AR 00021.) Specifically, the Plan states in pertinent part:

> An Employee who shall have had not less than 10 years of credited service, and who shall thereafter become, through some unavoidable cause, permanently and totally disabled while accumulating seniority with the Employer, shall be entitled to a pension upon retirement as hereinafter provided. An Employee shall be deemed to be permanently and totally disabled only if, prior to the month in which the Employee's 65th birthday occurs:
>
> (a) he has been totally disabled by bodily injury or disease so as to be prevented thereby from being physically able to perform the work of any classification in the local plant, and
>
> (b) such total disability shall have continued for 5 consecutive months, and, in the opinion of a qualified physician designated by the Pension Board, will presumably be permanent and total during the remainder of his life.

(AR 00021.)

Young contends, however, that he never received a copy of the actual Plan while he was still employed by Bridgestone. Instead, he was given a Summary Plan Description ("SPD"). The SPD section regarding eligibility for disability retirement benefits states as follows:

> You may retire with a Disability Retirement pension if you have completed at least 10 years of credited service and thereafter (but before age 65) become totally and permanently disabled, through some unavoidable cause, while accumulating seniority. You must have been totally disabled for at least five consecutive months to qualify.

(Doc. No. 31, Exhibit.)

Approximately three and a half years after his employment with Bridgestone was terminated for cause,

on May 10, 2005, Young applied for disability retirement benefits from BSAH.[1]  (AR 00636–37.)  Despite clear notice on the face of the application that it would not be considered to be a completed application "UNLESS ACCOMPANIED BY ALL NECESSARY FORMS AND <u>ALL</u> MEDICAL RECORDS, FROM <u>ALL</u> TREATING PHYSICIANS" (AR 00636 (emphasis and capital letters in original)), Young did not submit supporting records from any treating physicians with his initial application.  Instead, he submitted the March 23, 2005 decision of the Administrative Law Judge on his Social Security Disability Claim, which indicated that Young had first filed for Social Security Disability Insurance Benefits on August 7, 2002, and awarded disability benefits based upon a finding that he was disabled for Social Security purposes beginning as of August 15, 2001.  (AR 00634–50.)  The disability date of August 15, 2001 was apparently chosen by the ALJ based only upon Young's allegation of disability due to bipolar disorder and schizophrenia beginning that date, leading to the ALJ's finding that Young had not engaged in substantial gainful activity since August 15, 2001.  (AR 00646.)  According to Bridgestone's records and Young's allegations here, however, it is clear that Young worked full time and even overtime hours for nearly two months after August 15, 2001.  (AR 00288–89, 00634–35.)  Indeed, despite the ALJ's decision, Young's application for disability pension benefits under the Plan at issue here asserted that he had been "disabled since 10-10-01" (AR 00635), and he claimed in his Application for Disability Pension that he was laid off effective October 8, 2001 (AR 00636).

Upon initial review of Young's disability application, the Disability Committee determined that Young was not totally disabled under the Plan's terms and therefore denied his claim.  (AR 00628–33.)  Young appealed the denial on October 26, 2005.  (AR 00610–11.)  Again, he did not provide any medical records in support of his claim.  Instead, he resubmitted the Social Security decision.  (*Id.*)  On November 18, 2005, Young was asked by letter to provide all medical records from all treating physicians from January 1, 2000 to the present to facilitate review of his claim.  (AR 544.)  He finally provided medical records four months later.  (AR 00290–91, 00304–511.)  The earliest date referenced in any of the medical records Young submitted is October 10, 2001, on which date he was admitted for in-patient treatment at Tennessee Christian Medical

---

[1]In the interim, Young had sued Bridgestone and the Union on a variety of claims, including alleged interference with ERISA benefits, approximately sixteen months after his termination date.  This Court (Echols, J.) dismissed that lawsuit in October 2003 based upon the statute of limitations.  Young had also applied for, and been awarded Social Security disability benefits.

Center, Behavioral Health Service, for "stabilization of symptoms of bipolar disorder" (AR 00406). The records indicate he had previously been hospitalized at least two prior times for treatment of bipolar disorder, and that he has a long history of substance abuse. (*See* AR 00415.) There is, however, no indication in the record that Young's mental illness (or substance abuse) disrupted his work prior to the date of his termination.

The Pension Board reviewed Young's claim and upheld the denial of benefits on May 4, 2006, stating as follows:

> Pursuant to the terms of the Plan, an employee is "deemed to be permanently and totally disabled" only if the total disability has continued for 5 consecutive months while the employee is accumulating seniority. Because Mr. Young was terminated on October 10, 2001, he ceased accumulating seniority on that day. It was not possible for Mr. Young's alleged disability to satisfy the definition under the Plan because he could not be totally disabled for 5 consecutive [months] while accumulating service."

(AR 00282.)

Young objects to the Pension Board's decision on the grounds that it is based upon an allegedly unreasonable interpretation of the Plan language; BSAH maintains that the Pension Board's determination was based upon the most reasonable interpretation of the clear language of the Plan.

## II. STANDARD OF REVIEW

Ordinarily, a district court reviews *de novo* a challenge to the denial of benefits under an ERISA plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, if the Plan itself grants the plan administrator discretion to determine eligibility for benefits, courts review those determinations under the "arbitrary or capricious" standard of review. *Bartlin v. Fruehauf Corp.*, 29 F.3d 1062, 1071 (6th Cir. 1994). In this case, the parties agree that the plan administrator had discretion to determine Young's eligibility for disability retirement benefits,[2] so this Court must review the Plan administrator's decision under the arbitrary or capricious standard.

"The arbitrary or capricious standard is the least demanding form of judicial review of administrative

---

[2]The Plan is administered by a Pension Board appointed by BSAH. (AR 00021, 00222–00225.) Pursuant to the terms of the Plan, the Pension Board has:
> sole and absolute discretion to interpret the provisions of the Pension Program . . . , to make factual findings with respect to any issue arising under the Pension Program, to determine the rights and status under the Pension Program of Participants or other individuals, [and] to resolve questions or disputes arising under the Pension Program. . . .

(AR 00224.)

action. When it is possible to offer a reasonable explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citation omitted).

### III. DISCUSSION AND ANALYSIS

Young contends that there are two issues to be decided by the Court. First is the question of whether it was arbitrary and capricious for the Plan administrator to interpret the Pension Plan to require that the Young must "continue to be disabled *and* also thereafter continue to accumulate service for 5 months before he is qualified to receive the disability pension." Second, Young claims that the Summary Plan Description he was given is "even more clear" than the Plan itself that a claimant does not have to accumulate seniority *after* becoming disabled in order to qualify for disability retirement benefits. The language of the SPD, he argues, therefore "give[s] added weight to [his] position." (Doc. No. 31, at 4–5.)

#### A. The Administrator's Decision Was Rational in Light of the Plan's Provisions

Young argues that under the plain language of the Plan, he is entitled to disability benefits. More specifically, he claims that according to the Plan an employee who seeks disability retirement benefits is required to establish only two facts: (1) that he has ten years of credited service and (2) that he became totally disabled while accumulating credited service. Thus, Young argues, BSAH's interpretation of the Plan was incorrect and unreasonable insofar as it included a requirement that the disability continue for five consecutive months *while the employee is accumulating seniority* with the employer.

Young's contentions notwithstanding, the Court finds that BSAH's interpretation of the Plan is consistent with the clear language thereof. As indicated by Young, and quoted in the fact section above, the relevant portion of the Plan requires that the employee seeking to retire with disability benefits, in addition to having at least ten years of credited service, must become "permanently and totally disabled *while accumulating seniority* with the Employer." (AR 00021 (emphasis added).) Further, the Plan defines "permanently and totally disabled" as a disability that has *already* continued for five consecutive months and, "in the opinion of a qualified physician designated by the Pension Board, will presumably be permanent and

total during the remainder of [the employee's] life."[3] (*Id.*) In other words, a disability can only be considered permanent and total *after* it has continued for five consecutive months during which period the employee has continued to accumulate seniority, presumably while on leave based upon temporary disability. At that point, assuming the disability is expected to be permanent and that the employee has at least ten years of seniority, the employee will be entitled to *retire* with disability *retirement* benefits.

In the case at bar, the record is clear that Young's alleged disability began on October 10, 2001, the day he was terminated for refusing to take a drug test or to participate in a drug rehabilitation program. He could not have been deemed "permanently and totally disabled" as of that date. Not until such disability continued for five months *and* was determined by a qualified physician to be likely to be permanent and total for the duration of Young's life could the disability be deemed permanent and total. Assuming those two criteria were met, the operative question then would be whether the employee was still accumulating seniority. Certainly, if the employer terminated his employment during the five-month waiting period in order to prevent him from being entitled to disability retirement, the employee would have a claim for interference with ERISA benefits.

That is not what happened here, however. Young was given notice of termination on October 8, 2001, and his termination became effective on October 10, 2001, the same day his disability began but without his employer's having any awareness of that fact. By the time his disability could be deemed permanent and total, he was no longer working for or accumulating seniority with Bridgestone, so he was not entitled to *retire* from Bridgestone with disability benefits. Even if an alternative interpretation of the Plan were plausible, the Pension Board's decision was clearly rational in light of the Plan's provisions and therefore cannot be found to be arbitrary or capricious. Young's argument in that regard therefore fails.

**B. The Plan's Terms Do Not Conflict with Those of the SPD**

By statute, ERISA plan participants must be provided with a summary plan description that meets certain criteria, and the summary plan description must "be written in a manner calculated to be understood

---

[3]It is apparent from the record that Young never obtained an opinion from "a qualified physician designated by the Pension Board" regarding the probable duration of his disability, but BSAH never raised that fact as a basis for denying benefits.

by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). The Sixth Circuit has repeatedly and unequivocally held that "statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern." *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988); *Rhoton v. Central States, Southeast & Southwest*, 717 F.2d 988, 989–91 (6th Cir. 1983). Further, the Sixth Circuit does not require a claimant who has been misled by a summary plan description to prove detrimental reliance. *Edwards*, 851 F.2d at 137. Notwithstanding,"[a]n omission from the summary plan description does not, by negative implication, alter the terms of the plan itself." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 401 (6th Cir. 1998) (en banc). "The reason is obvious: by definition, a summary will not include every detail of the thing it summarizes." *Id.*

Young, while referencing Sixth Circuit case law regarding the effect of an SPD that contradicts the terms of the applicable benefit plan, does not actually claim that the SPD in this case conflicts with the Plan terms. Rather, he argues that it is consistent with his understanding of the Plan language, as discussed above, but "even clearer in support of" his position than the Plan itself. The Court disagrees with Young's proposed interpretation of the Plan language but agrees that the SPD is consistent with the Plan.

The SPD, like the Plan, states that an employee "may retire with a Disability Retirement pension" if he "become[s] totally and permanently disabled . . . while accumulating seniority." (Doc. No. 31, Exhibit.) The SPD further clarifies: "You must have been totally disabled for at least five consecutive months to qualify." (*Id.*) Clearly, the last sentence must be read in context of the provision as a whole to mean that an employee must show he has been totally disabled for at least five consecutive months *to qualify as totally and permanently disabled* or *to qualify for disability retirement benefits.* In either event, the ability to *retire* is key. If the employee has been fired for a legitimate cause by the time he seeks to be considered totally and permanently disabled, he will not be entitled to *retire* with disability *retirement* benefits. Young's attempt to twist the clear intent of the Plan is unavailing, as is his claim that BSAH's application of the clear language of the Plan is arbitrary and capricious.

**IV.    CONCLUSION**

The Court is sympathetic to Mr. Young's plight, but the insurmountable fact remains that he was

terminated from his employment for cause and he failed to protect his rights in a timely fashion. BSAH's determination that he was not qualified for disability retirement benefits was neither arbitrary nor capricious. It was, rather, based upon an entirely reasonable interpretation of the Plan. Further, the Summary Plan Description is not inconsistent with the clear terms of the Plan. The Court will therefore deny Plaintiff Danny Young's motion for judgment on the administrative record and grant Defendant BSAH's cross-motion for judgment on the administrative record.

An appropriate order entering Final Judgment in favor of the Defendant will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge